**BAWA MUHAIYADDEEN FELLOWSHIP,**
Appellant

v.

**PHILADELPHIA ZONING BOARD OF ADJUSTMENT and City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 12, 2010.
Decided March 28, 2011.

William F. Martin, Philadelphia, for appellant.

Terry M. Henry, Philadelphia, for intervenor, Overbrook Farms Club.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McCULLOUGH.

Bawa Muhaiyaddeen Fellowship (Appellant), appeals from the April 14, 2009, order of the Court of Common Pleas of Philadelphia County (trial court), affirming the March 28, 2008, decision of the Philadelphia Zoning Board of Adjustment (Board), which denied Appellant's application for a use variance. We affirm.

**Facts and Procedural History**

Appellant was founded in 1971 in honor of Mohammed Raheem Bawa Muhaiyaddeen, a Sufi saint from Sri Lanka. Appellant owns two adjoining parcels of property, which are located at 5820 Overbrook Avenue and 5830 Overbrook Avenue, in a neighborhood known as Overbrook Farms in Philadelphia, Pennsylvania. Both properties are located in an R–2 zoning district pursuant to the Philadelphia Zoning Ordinance (Ordinance). Intervenor, Overbrook Farms Club (Overbrook), is an association that represents property owners in Overbrook Farms with the express intent of preserving the residential character of the neighborhood.

Appellant purchased the property at 5830 Overbrook Avenue in 1973 as a place of worship for its members. In 1984, Appellant constructed a mosque on that property pursuant to a legal nonconforming use. Bawa Muhaiyaddeen resided on the property from the early 1970's until his death in 1986. When Bawa Muhaiyaddeen passed away, he left his followers 15,000 hours of audio recordings and 1,500 hours of video recordings, which remain on the property. The mosque and Mr. Bawa's room are considered holy places where followers come to meditate and consider Mr. Bawa's teachings.

In 2001, Appellant purchased the adjacent property, at 5820 Overbrook Avenue (subject property), which includes a single family home, in order to accommodate the growing needs of its fellowship. Appellant began renovating the subject property immediately. On August 9, 2007, Appellant applied to the Department of Licenses and Inspection for permission to change the use of the subject property from a single family residence to the following: a mechanical room in the basement; an office with a conference room on the first floor; additional offices on the second floor; and a caretaker's apartment on the third floor. (Findings of Fact, Nos. 1, 12.) The Department of Licenses and Inspection denied Appellant's application, concluding that the proposed use of the subject property for religious offices and a religious conference room is not permitted in an R–2 Residential District. (Finding of Fact No. 6.)

Appellant appealed to the Board, asserting that the denial of the use variance would result in unnecessary hardship and that the proposed use of the property is not contrary to the health, safety and welfare of the surrounding community. (Finding of Fact No. 8.) Following a public hearing, the Board denied Appellant's ap-

plication for a use variance on March 19, 2008, concluding that Appellant did not satisfy its burden to demonstrate undue hardship and that granting the variance would create an overuse of the subject property. (Conclusion of Law No. 10.) Appellant appealed the Board's decision to the trial court. By order dated April 14, 2009, the trial court denied the appeal and affirmed the decision of the Board. Appellant now appeals to this Court.[1]

## Landowner's Burden for Variance

 A party seeking a use variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). When a party seeks a variance for a property located in Philadelphia, the Board must also consider the factors set forth in the Ordinance.[2] *Wilson v. Plumstead Township Zoning Hearing Board*, 594 Pa. 416, 936 A.2d 1061 (2007). In essence, a landowner seeking a variance pursuant to the Ordinance must demonstrate that: (1) the denial of the use variance will result in unnecessary hardship unique to the property; (2) the proposed use will not adversely impact the public interest; and (3) the variance is the minimum variance necessary to afford relief. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998). The burden on a landowner seeking a variance is a heavy one, and the reasons for granting the vari-

1. When the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning board committed an abuse of discretion or an error of law in denying the use variance. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia*, 814 A.2d 847 (Pa.Cmwlth.2003). The zoning board abuses its discretion when it makes material findings of fact not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856 (Pa.Cmwlth.1996).

2. Section 14–1802(1) of the Ordinance provides the following criteria for consideration:
 (a) that because of the particular physical surroundings, shape, or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of this Title would result in unnecessary hardship;
 (b) that the conditions which the appeal for a variance is based are unique to the property for which the variance is sought;
 (c) that the variance will not substantially or permanently injure the appropriate use of adjacent conforming property;
 (d) that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant;
 (e) that the grant of the variance will not substantially increase congestion in the public streets;
 (f) that the grant of the variance will not increase the danger of fire, or otherwise endanger the public safety;
 (g) that the grant of the variance will not overcrowd the land or create an undue concentration of population;
 (h) that the grant of the variance will not impair an adequate supply of light and air to adjacent property;
 (i) that the grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park or other public facilities;
 (j) that the grant of the variance will not adversely affect the public health, safety or general welfare;
 (k) that the grant of the variance will be in harmony with the spirit and purpose of this Title; and
 (l) that the grant of the variance will not adversely affect in a substantial manner any area redevelopment plan approved by City Council or the Comprehensive Plan for the City approved by the City Planning Commission.
 Philadelphia Zoning Ordinance § 14–1802(1)(a)–(l).

ance must be substantial, serious and compelling. *Valley View.* Further, a use variance carries a greater risk of injury to the public interest than a dimensional variance. *Id.*

### Unnecessary Hardship

■ Appellant asserts that the denial of the use variance results in unnecessary hardship because the subject property is surrounded by properties used for religious purposes, including a Cardinal's home, the convent adjacent to the Cardinal's home, and the residence owned by Saint Joseph's University and, therefore, is valueless and unusable as a residential property.[3] In support of this assertion, Appellant cites *Valley View,* where our Supreme Court noted that the use of adjacent and surrounding land is unquestionably relevant in evaluating hardship. *Id.* at 556, 462 A.2d at 640. There, the court upheld the grant of a use variance by the

Board because the "extensive commercial and industrial uses in the immediate vicinity rendered [the] property virtually unusable and of scant value for traditional residential purposes."[4] *Id.* at 559, 462 A.2d at 642. Appellant also asserts that the unique nature of the adjacent property as a place of worship results in unnecessary hardship because Appellant intends to use the subject property in connection with the adjacent property.

■ In order to establish unnecessary hardship, a party must demonstrate that the property cannot be used for a permitted purpose, that the cost of conforming the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997).[5] Here,

---

3. Before the trial court, Appellant also asserted that the property could not be used for residential purposes as a result of the renovations it had already made. Although Appellant again references the renovations in its statement of the case, it has not made any specific argument in its brief that the renovations result in unnecessary hardship. Moreover, as the trial court correctly observed, it is well settled that unnecessary hardship cannot be self-created. *Doris Terry Revocable Living Trust v. Zoning Board of Adjustment of the City of Pittsburgh,* 873 A.2d 57 (Pa.Cmwlth. 2005). Thus, Appellant did not meet its burden to demonstrate that the alleged hardship was not self-created under section 14–1802(1)(d) of the Ordinance.

4. In *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983), our Supreme Court upheld the decision of the Zoning Board of Adjustment of Philadelphia, which granted a use variance to convert a three story detached dwelling, located in a residential district, to a takeout sandwich shop with a residence on the second and third floors. The court concluded that the Board's decision that the property was unfit for residential use was supported by substantial evidence that the property was

located on a busy street, abutted by a gas station and convenience store, and virtually surrounded by disharmonious commercial and industrial properties.

5. In *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997), a company sought use and dimensional variances to use property contaminated with petroleum hydrocarbon and benzene as an open air parking lot. The zoning board concluded that the property was unfit for residential use and granted the variances, and the trial court affirmed. The Commonwealth Court reversed, concluding that the Board's decision was not by supported by substantial evidence that the company would suffer undue hardship because the company received an offer of $200,000 to purchase the property, which it rejected. However, our Supreme Court reversed and held that it was unreasonable to require the company to pursue an offer for half of the property's initial value and that the company was not required to demonstrate that the property was valueless, observing that the cost to conform the property to a permitted purpose was prohibitive.

Appellant provided evidence that several of the properties surrounding the subject property are owned by religious institutions, but Appellant did not demonstrate that these neighboring properties are non-conforming or render the subject property unfit for residential use. As Overbrook observes, Appellant did not present evidence that the Cardinal's home, the convent adjacent to the Cardinal's home, or the residence owned by Saint Joseph's University are utilized for something other than residential use.[6] Moreover, the record reflects that the subject property was used as a single family residence for one hundred years before it was purchased by Appellant and that in 1980, Overbrook Farms was placed on the National Register of Historic Places, in part because of the residential character of the neighborhood. Thus, Appellant did not meet its burden to demonstrate that the property is unfit or of scant value for residential use.

■ To the extent Appellant argues that the unique nature of the *adjacent* property results in unnecessary hardship, we note that the relevant inquiry is whether the hardship created by the application of the zoning provisions is unique to the *subject* property as distinguished from the hardship arising from the impact of the zoning regulations on the entire district, or the impact of the zoning regulations on the owner of the property. *Somerton Civic Association v. Zoning Board of Adjustment*, 80 Pa.Cmwlth. 173, 471 A.2d 578 (1984); *see also Society Created to Reduce Urban Blight v. Zoning Board of Adjustment of City of Philadelphia*, 771 A.2d

874, 878 (Pa.Cmwlth.2001), *appeal denied,* 567 Pa. 733, 786 A.2d 992 (2001) (stating that "just because a person wants to do more with his or her land in addition to the use that it is presently being used for is not a sufficient unnecessary hardship unique to that piece of land."); *Zappala Group, Inc. v. Zoning Hearing Board of Town of McCandless,* 810 A.2d 708, 711 (Pa.Cmwlth.2002) (providing that a use variance "is appropriate only where the *property,* not the person, is subject to hardship") (emphasis in original) (internal citation omitted). Here, the hardship alleged is unique to Appellant and its use of the adjacent property, not the subject property. Thus, Appellant did not meet its burden to demonstrate the hardship alleged is unique to the subject property.[7]

### Public Interest

■ With regard to considerations of the public interest, Appellant asserts that the Board erred in concluding that the proposed uses will create an overuse of the subject property. Appellant avers that granting the variance will merely result in a shift of uses from the adjacent property to the subject property. In support of these contentions, Appellant again relies on *Valley View,* which concluded that the Board's decision that the proposed use of the property as a sandwich shop was not contrary to the public interest was supported by substantial evidence that "the anticipated clientele of the proposed sandwich shop were motorists already on the Avenue, that there were an adequate number of legal parking spaces in front of the property and that [the] proposed plans

---

6. Appellant did present evidence that there is a Pentecostal Christian Church adjacent to the subject property. However, Appellant did not establish that the close proximity of one religious use renders the subject property unfit or of scant value for residential use.

7. Accordingly, Appellant did not meet its burden to demonstrate that a particular physical condition of the property resulted in unnecessary hardship or that the alleged unnecessary hardship was unique to the property pursuant to sections 14–1802(1)(a)–(b) of the Ordinance.

included eleven off-street parking spaces in the rear of the property." *Id.* at 560, 462 A.2d at 642.

However, Appellant did not present evidence that granting the variance would merely shift the proposed uses from the adjacent property to the subject property or that an adequate number of parking spaces exist in front of or on the subject property. Rather, Pat Andrews, the General Secretary for Appellant, testified that eight volunteers will use the subject property daily and up to twelve additional people will visit the library and utilize the conference room each week.[8] (R.R. at 19–20.) Moreover, several residents of Overbrook Community testified that the influx of nonresidential uses exacerbates existing traffic and parking problems, and Andrews acknowledged that fellowship members sometimes park on the subject property when parking is not available on the street.[9] (R.R. at 24, 45.) Residents of Overbrook Community further testified that the decision to move to Overbrook is based on their desire to live in a stable, historic, residential community and that granting the variance will deter future investment in single family homes because residents will not be secure in the idea that the neighborhood will retain its residential character.[10] (R.R. at 40, 45–46, 53, 56, 61.) Thus, the evidence before the Board was sufficient to support the Board's determination that the proposed use of the property was contrary to the public interest.

## Equal Protection

 Finally, Appellant avers that the Board's refusal to grant the variance violates the equal protection clause of the Fourteenth Amendment, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[11] *U.S. Const. amend. XIV.* A land use ordinance that does not classify by race, alienage, or national origin, will survive an attack based on the equal protection clause if the ordinance is reasonable, not arbitrary and bears a rational relationship to a legitimate state objective. *Congregation Kol Ami v. Abington Township,* 309 F.3d 120 (3d Cir.2002). The court in *Congregation Kol Ami* provided the following standard for determining if a zoning ordinance violates the equal protection clause:

> The first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is *similarly situated to other uses that are either permitted*

---

8. Appellant did not present evidence necessary to demonstrate that the influx of additional volunteers and visitors to the subject property would not overcrowd the land pursuant to section 14–1802(1)(g) of the Ordinance.

9. Appellant did not present evidence necessary to demonstrate that the grant of the variance would not substantially increase congestion and, therefore, did not meet its burden under section 14–1802(1)(e) of the Ordinance.

10. Consistent with the concerns expressed by neighboring property owners, Overbrook presented testimony that converting homes for commercial use destabilizes the neighborhood, brings down the value of surrounding properties, and discourages new investors and that Overbrook has worked with the Philadelphia City Planning Commission to use the Ordinance to preserve the residential character of the neighborhood. Thus, Appellant did not meet its burden to demonstrate that the proposed use of the property would not adversely affect a neighborhood plan approved by the City Planning Commission under section 14–1802(1)(*l*) of the Ordinance.

11. Appellant raised and preserved its equal protection argument before the Board and the trial court, but the issue was not addressed by either.

*as of right, or by special permit,* in a certain zone.

*Id.* at 137 (emphasis provided). If a landowner meets its burden to demonstrate that the proposed use of a property is similarly situated to other uses permitted as of right or by special permit, the burden then shifts to the municipality to demonstrate that the use regulations are rationally related to a legitimate interest in promoting the public health, safety, morals, and general welfare of its citizens. *Id.* at 133. Zoning is discriminatory by design, and municipalities are permitted to create exclusive residential districts so long as they have a rational basis for distinguishing between uses. *Id.* at 136.

Thus, Appellant's burden is to demonstrate that the proposed nonconforming uses are similarly situated to uses permitted by right or by special permit. Appellant observes that sections 14–203(3)(b) and (c) of the Ordinance permit the following uses in a R–2 zoning district: single family detached dwelling; accessory uses; signs; and family day care centers for up to six children.[12] Appellant avers that its proposed use of the third floor of the subject property as a caretaker's residence is similar to the permitted use as a single family detached dwelling.[13] Appellant also contends that the proposed nonconforming uses of the subject property for offices, a library, and conference rooms for the Bawa Fellowship are similar to use as a family day care center, in that the proposed uses are low intensity and will benefit the residents in the community.[14] Lastly, Appellant asserts that the proposed uses for the subject property are similarly situated to surrounding non-conforming religious uses, including properties owned by Saint Joseph's University and the Pentecostal Christian Church.

We recognize that the use of the entire subject property as a caretaker's residence may be a use "similarly situated" to a use as a single family detached dwelling. In fact, nothing in the record suggests that the use of the subject property as a caretaker's residence was a significant factor in the Board's denial of the use variance, and

---

**12.** Section 14–203(3)(c)(.1) (emphasis provided) of the Ordinance permits family day care centers in a R–2 zoning district with the following limitations:

(.1) Providing of *family day care to six (6) or fewer children* (except that for properties within the Sixth and Tenth Councilmanic Districts, family day care may only be provided to four (4) or fewer children) for periods of less than 24 consecutive hours, provided that such *day care providers conform to all relevant licensing and/or registration requirements* of the Commonwealth of Pennsylvania and the City of Philadelphia, and further provided that such day care be conducted in completely enclosed structures containing no more than one family and *in a manner incidental to the main purpose of the residences;* provided however, that nothing in this subsection shall be construed to restrict uses customarily and traditionally conducted in dwellings as an accessory use to the main purpose of the residences, including the providing of day care for less than 10 hours per week or the providing of day care without charge or without reimbursement.

**13.** Section 14–102(21)(a) of the Ordinance defines a detached building as follows:

(a) A detached building is one with no party wall or walls and which has a rear yard, a set-back and two (2) side yards on intermediate lots, or one (1) side yard, a rear yard and two (2) set-backs (when required herein) on corner lots[.]

**14.** Section 14–102(36.1) of the Ordinance defines a day care as follows:.

The provision of care to individuals under the age of 18 for periods less than twenty-four (24) consecutive hours, but not including schools, provided that such day care conforms to all applicable licensing and/or registration requirements of the Commonwealth of Pennsylvania and the City of Philadelphia[.]

Overbrook acknowledges that the use of the subject property as a caretaker's residence is permitted in the R–2 zoning district. Thus, the use of the subject property as a caretaker's residence is irrelevant to the determination of whether Appellant was denied equal protection of the law.

To the extent that Appellant argues that the proposed nonconforming uses of the property for a conference room, library, and offices for volunteers and visitors of the Bawa Fellowship are similarly situated to use as a family day care center, we note that a family day care center must be conducted in a manner that is incidental to the primary use of a property as a residence, which is a use as of right, while the proposed nonconforming use of the subject property as a visiting center for volunteers and scholars is not incidental to the primary use of the property as a residence and does not involve a use as of right. Further, use as a family day care center is limited to six children and is closely regulated while the proposed nonconforming use of the subject property does not limit the number of volunteers or visiting scholars and is not subject to regulatory oversight. Accordingly, not only is Appellant's argument that the proposed non-conforming use is similarly situated because it is low intensity and beneficial to the community not supported by the record, it misconstrues the applicable standard of re-

view for an equal protection claim. Thus, we conclude that the proposed use of the property is not similarly situated to a family day care center as defined by the Ordinance.

With respect to the use of adjacent properties for religious purposes, Appellant did not present any evidence necessary to establish how the Cardinal's residence or the property owned by Saint Joseph's University are used or if they are in fact nonconforming; nothing in the record suggests that the properties are used for anything other than residential use, which is permitted in the R–2 zoning district.[15] Further, unlike the Pentecostal Church, Appellant does not intend to use the subject property as a place of worship.[16] Thus, Appellant did not meet its burden to demonstrate that the proposed use of the property is similarly situated to the use of surrounding properties.

■ Because Appellant did not meet its burden to first demonstrate that the proposed nonconforming use of the subject property as a library, conference room, and offices for volunteers and visitors of the Bawa fellowship is similarly situated to other permitted uses or uses as of right in the R–2 zoning district, Appellant's equal protection argument fails and we do not have to reach the issue of whether the

15. Appellant cites *Islamic Center of Mississippi v. City of Starkville*, 840 F.2d 293 (5th Cir.1988) for the proposition that a municipality must advance more than mere neighborhood opposition in order to establish a rational basis for distinguishing between religious uses. However, *Islamic Center* involved a challenge to a zoning ordinance under the free exercise clause of the Constitution, not the equal protection clause and, therefore, does not involve the same two-step inquiry applied here. Moreover, to the extent Appellant erroneously asserts the application of the rational basis test, it attempts to circumvent establishing its initial burden to demonstrate

that the proposed use of the subject property is similarly situated to the use of surrounding properties.

16. As Overbrook observes, Appellant's reference to the proposed use of the property for religious purposes is a subtle way to implicate the *Pennsylvania Religious Freedom Protection Act*, Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401–2407 and the federal *Religious Land Use and Institutionalized Person Act*, 42 U.S.C. §§ 2000cc–2000cc–5. Although Appellant raised those issues before the Board, it has since abandoned them.

Ordinance is supported by a rational basis for distinguishing between uses.[17]

Accordingly, for the foregoing reasons, we affirm.

**ORDER**

AND NOW, this 28th day of March, 2011, the April 14, 2009, order of the Court of Common Pleas of Philadelphia County is hereby affirmed.

---

**17.** Although Appellant did not meet its burden to demonstrate that the proposed use of the property is similarly situated to permitted uses or uses as of right, we note that absent some animus or other improper motive, a land use ordinance creating exclusive residential districts will typically be found to serve a legitimate state interest. *Congregation Kol Ami,* 309 F.3d at 135. Here, the record supports Overbrook's assertion that the R–2 zoning district was created to preserve the residential character of the neighborhood, to encourage the rehabilitation of homes as single family residences, and to mitigate existing traffic and parking problems by limiting nonresidential uses to other zoning districts. Thus, even if Appellant did meet its burden to demonstrate that the proposed use of the property is similarly situated to a permitted use or use as of right, we would find that the record reflects that the Ordinance is rationally related to a legitimate state interest.