IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leroy London,                          :
                    Appellant         :
                                       :
                                       :
          v.                           :
                                       :
                                       :   No. 2256 C.D. 2014
Zoning Board of Adjustment             :   Submitted January 29, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: July 7, 2016


          Leroy London (Applicant) appeals from the Philadelphia County
Common Pleas Court's (trial court) October 29, 2014 order denying Applicant's
appeal from the Zoning Board of Adjustment (ZBA) and affirming the ZBA's
decision.  Applicant presents four issues for this Court's review: (1) whether an
unnecessary hardship exists warranting the granting of a use variance to operate an
adult cabaret; (2) whether Applicant properly raised a constitutional challenge to
Section 14-601(7)(a)(.1) of the Philadelphia Zoning Code (Code); (3) whether
Section 14-601(7)(a)(.1) of the Code is unconstitutional because the definition of
adult cabaret is overbroad; and (4) whether Section 14-601(7)(a)(.1) of the Code is
unconstitutional because the definition of adult cabaret is vague.

          On August 21, 2013, Applicant applied to the City of Philadelphia's
(City) Department of Licenses and Inspections (L&I) for a zoning/use registration
permit to operate an adult cabaret within an existing restaurant/bar (Property).  The
Property consists of a 1,912 square foot lot improved with the two-story

restaurant/bar on the corner of North 30th and Clementine Streets in a Neighborhood Commercial Mixed-Use-2 (CMX-2) Zoning District.  On September 18, 2013, L&I issued a Notice of Refusal because an adult cabaret is not permitted in the CMX-2 Zoning District, and because the proposed use is prohibited within 500 feet of religious assemblies, schools and residential homes.  Applicant appealed to the ZBA.  On December 10, 2013, a ZBA hearing was held.  On January 14, 2014, the ZBA denied Applicant's variance request.  On January 20, 2014, Applicant submitted a request for reconsideration which the ZBA denied on February 5, 2014.  On February 5, 2014, Applicant appealed to the trial court.  On October 28, 2014,[1] the trial court heard oral arguments.  On October 29, 2014, the trial court denied Applicant's appeal.  Applicant appealed to this Court.[2]

**Background**

The Property is located across the street from an industrial use and is adjacent to a church.  Other nearby uses include commercial and residential uses and a school.  Applicant acquired the Property in 1971 and operated it as a private club.  Without obtaining the required use permits, Applicant remodeled the Property's interior in the 1980s by adding stages and poles, and began operating as an adult

---

[1] The parties submitted a joint motion for extraordinary relief to extend the briefing deadline, which the trial court granted on July 2, 2014.  The trial court received the certified record on July 9, 2014, and a supplemental certified record on July 18, 2014.  Applicant filed his brief on August 12, 2014.

[2] "Where a trial court takes no additional evidence in an appeal from a decision of the [ZBA], this Court is limited to considering whether the [ZBA] erred as a matter of law or abused its discretion." *German v. Zoning Bd. of Adjustment*, 41 A.3d 947, 949 n.1 (Pa. Cmwlth. 2012).  "A [ZBA] abuses its discretion if its findings are not supported by substantial evidence." *Arter v. Phila. Zoning Bd. of Adjustment*, 916 A.2d 1222, 1226 n.9 (Pa. Cmwlth. 2007).

The trial court's order was not docketed until December 3, 2014.  Consequently, Applicant's appeal was timely filed.

By July 2, 2015 order, the ZBA was precluded from filing a brief for failure to timely file it in accordance with this Court's prior order.

2

cabaret. Subsequently, Applicant made at least two unsuccessful attempts to obtain a use permit to operate an adult cabaret. Applicant also applied for a variance in 2010, but was denied. Notwithstanding, Applicant operated an adult cabaret at the Property from 3:00 p.m. to 3:00 a.m., seven days a week, every day thereafter.

## Discussion

Applicant first argues that he has met all four criteria to show an unnecessary hardship exists warranting a use variance to operate an adult cabaret. We disagree. Section 14-303(8)(e)(.1) of the Code provides the following requisites for granting a use variance:

> (a) **that denial of the variance would result in unnecessary hardship**;
>
> (b) **that applicant did not create the unnecessary hardship supporting grant of the variance**;
>
> (c) that the requested variance is the minimum variance necessary to afford relief and the least modification possible of the regulation in issue;
>
> (d) that grant of the variance will be in harmony with the spirit and purpose of the [] Code;
>
> (e) that grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire or otherwise endanger the public health, safety or general welfare;
>
> (f) that grant of the variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;
>
> (g) that grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

3

(h) that grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(i) [t]hat grant of the variance will not create significant environmental damage or increase the risk of flooding, either during or after construction.

Reproduced Record (R.R.) at 134a (emphasis added). In order for Applicant to meet the unnecessary hardship requirement for a variance, Section 14-303(8)(e)(.2) of the Code mandates that the ZBA render the following findings:

(.a) That there are unique physical circumstances or conditions . . . peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this [] Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, **there is no possibility that the property can be used in strict conformity with the provisions of this [] Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property**;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Applicant Br. at 25 (emphasis added); Trial Ct. Op. at 8. Further,

[a] party seeking a use variance must prove that unnecessary hardship will result if the variance is denied and that the proposed use is not contrary to the public interest. . . . **The burden on a landowner seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling**. Further, a use variance carries a greater risk of injury to the public interest than a dimensional variance.

4

*Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 39-40 (Pa. Cmwlth. 2011) (citations omitted; emphasis added). Moreover, "[i]n order to establish unnecessary hardship, a party must demonstrate that the property cannot be used for a permitted purpose, that the cost of conforming the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose." *Id.* at 40.

With respect to the first requirement, Applicant's attorney Dawn M. Tancredi (Attorney Tancredi) represented on Applicant's behalf at the ZBA hearing:

> The first criteria indicates there are unique physical circumstances or conditions peculiar to the property, here, as you can see in the photos that have been submitted. [sic] We have a property that was specially outfitted with stages and designated dance areas and oversized bars. These improvements are not applicable in any other use, other than an adult cabaret.[3]

R.R. at 19a-20a. When asked what was "so unique about the bar that it can't be used as just a regular bar without it being an adult cabaret[,]"Attorney Tancredi responded: "Well, the poles, as you can see shown in the photos, are unique to an adult cabaret. You will not find them in a traditional restaurant setting. So they are unique −[.]" R.R. at 20a. However, Applicant personally testified that he "put the poles in" and "put the stage there." R.R. at 33a. Further, when asked again why the Property could not be used as a bar rather than an adult cabaret, Attorney Tancredi responded:

> And that really goes into the next prong of the criteria, so I'll address that. **Because of the physical circumstances or conditions, there is no possibility that the [P]roperty could be used in strict conformity with the pr[o]visions of the [C]ode and the variance necessary to enable the econom[ic] use of the [P]roperty**.

---

[3] At the end of Attorney Tancredi's representation, she stated on the record: "I would like to ask my client if he adopts my testimony as his own[,]" to which Applicant responded: "Yes." R.R. at 29a.

In this case, as I mentioned, the [P]roperty cannot be used for a traditional restaurant. There is not enough room for adequate seating and additional tables. **It would be cost[-]prohibitive to refit the [P]roperty**. There is a double [P]roperty where when you walk inside, there is a couple of steps up to another part of the room. It's not even a flat floor layout where they could just put tables. There are dividing walls, which are structural and the layout just does not provide for the accommodation of a traditional restaurant.

**The bottom line is this business would not be able to survive without the variance**.

R.R. at 21a-22a (emphasis added). In addition, the following exchange occurred:

MS. [Julia] CHAPMAN [ZBA Chairperson]: In terms of the refusal, you are refused because you are either within 500 feet of a church, a school, a residential home or maybe all of them. What's the –

[Attorney] TANCREDI: There is a religious assembly and a school and homes.

MS. CHAPMAN: So all three. So you are within 500 feet of all three of the protected uses?

[Attorney] TANCREDI: Yes.

MR. [Greg] PASTORE [ZBA Board member]: It's also not allowed in CMX-2 at all. It would be refused even if it was on CMX-2 on the hillside in the middle of nowhere. The district -- in addition to the facing and requirements from protected uses and residential [sic] because of the regulated use requirements.

[Attorney] TANCREDI: My client has been at this location since 1971.

MS. CHAPMAN: So I'm still not at all clear why this [P]roperty cannot be used simply as a bar without the adult cabaret aspect –

[Attorney] TANCREDI: **Well, it's really a question of economic liability. It just won't make it**.

6

MS. CHAPMAN: How is that relevant to use variance?

[Attorney] TANCREDI: Well, I went through the four criteria and they are also included in my memorandum I turned in.

MS. CHAPMAN: I know you went through them, I don't understand, again, how the fact that you have a dance pole and a couple steps into a location, it's the only use possible in a CMX-2 classification as an adult cabaret?

R.R. at 30a-31a (emphasis added). Finally, upon further inquiry, Applicant and Attorney Tancredi responded:

[MR. PASTORE:] So why can't this not only just be a bar with plenty of floor spaces where people stand around and watch the Eagles game, or in the alternative, why can't a guy play a saxophone and people pay a cover charge and come into the club and it's a jazz club and he's wearing clothes? You have a hard case here.

[Attorney] TANCREDI: **It has a history of being a gentlemen's club**. My client can testify to that.

MR. PASTORE: That's what he does. I mean, what about being a –

[Applicant]: It's been a gentlemen's club ever since I've been there. I tried to update it to keep it in times [sic] with the modern world **because I put the pole in, pole dancing and everything**.

MR. PASTORE: Yeah, but I guess just -- not to belabor the point too much, but you said in 1971 you bought the [P]roperty and it was a private club?

[Applicant]: That's correct.

MR. PASTORE: A private club with nude women?

[Applicant]: No.

MR. PASTORE: So you not only -- you tried to stay up with the times and you decided in the 80s that part of being a gentlemen's club, I guess, is that you'll have topless women? I don't want anyone confused about this point,

7

that you segued from no topless women to topless women. That's where the [C]ode trips you up. And that's why you're here.

Do you understand that?

[Applicant]: Yes.

[Attorney] TANCREDI: We know we're here for a variance. We understand that. Really, part of the case is that this use, illegal, legal, it's been going on. **We're really asking for the status quo to, legalize the status quo, and allow this small business in the neighborhood to operate, to continue to operate**.

MS. CHAPMAN: As a private club?

[Attorney] TANCREDI: As an adult cabaret.

R.R. at 34a-35a (emphasis added).

While it is arguable that Applicant may have met his burden concerning Sections 14-303(8)(e)(.2)(.c) and (.d) of the Code by proving that he has been operating the Property as an adult cabaret for years and a dimensional variance will not permit an adult cabaret, he presented **no** substantial evidence regarding Sections 14-303(8)(e)(.2)(.a) and (.b) of the Code. The "unique physical circumstances or conditions . . . peculiar to the [P]roperty" according to the above testimony are the stages and poles which Applicant himself installed. Section 14-303(8)(e)(.2)(.a) of the Code. Further, there was no evidence presented to support the conclusion that "there is no possibility that the [P]roperty can be used in strict conformity with the provisions of this [] Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the [P]roperty[.]" Section 14-303(8)(e)(.2)(.b) of the Code. Although Attorney Tancredi represented that it would be "cost[-]prohibitive to refit the [P]roperty," and that it was a question of "economic liability," she did not present any evidence to support those conclusions. R.R. at 21a, 31a. Accordingly, because "[t]he burden on a landowner seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and

8

compelling[,]" we conclude that Applicant failed to meet his burden of establishing an unnecessary hardship exists warranting a use variance for the operation of an adult cabaret at the Property. *Bawa Muhaiyaddeen Fellowship*, 19 A.3d at 39-40.

Applicant next argues that he properly raised a constitutional challenge to Section 14-601(7)(a)(.1) of the Code because Section 916.1 of the Pennsylvania Municipalities Planning Code (MPC)[4] does not apply to Philadelphia. We agree.

The trial court rejected Applicant's constitutional arguments because they were not raised in accordance with the MPC. Specifically, pursuant to Section 916.1 of the MPC, a landowner who desires to challenge the validity of an ordinance on substantive grounds shall submit the challenge to the ZBA with a request for a curative amendment. However, the MPC applies only to second class A and third class cities. Section 107(a) of the MPC, 53 P.S. § 10107(a).[5] Because Philadelphia is a city of the first class, the MPC does not apply. "[S]ince the question of the constitutionality of the [Code] with regard to [the definition of adult cabaret] was properly submitted to the ZBA, we . . . remand this matter to the trial court for a determination on the constitutional issue[s]."[6] *Zoning Bd. of Adjustment of the City of Phila. v. Willits Woods Assocs.*, 534 A.2d 862, 866 (Pa. Cmwlth. 1987).

For all of the above reasons, the trial court's order affirming the ZBA's decision finding that an unnecessary hardship did not exist is affirmed, the trial

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.1.

[5] *See also, 1700 Columbus Assocs., LLC v. City of Phila. Zoning Bd. of Adjustment*, 976 A.2d 1257 (Pa. Cmwlth. 2009) (constitutional challenge to Philadelphia ordinance waived for failure to raise before the ZBA).

[6] Because we are remanding this case to the trial court to address the constitutional issues, we do not reach the remaining issues.

9

court's order denying Applicant's appeal is vacated and the matter is remanded to the trial court for consideration of the constitutional issues.

_____
ANNE E. COVEY, Judge

Judge Cohn Jubelirer did not participate in the decision in this case.

10

Leroy London,                :
             Appellant     :
                         :
         v.                 :
                         :
                         :    No. 2256 C.D. 2014
Zoning Board of Adjustment    :

## O R D E R

AND NOW, this 7th day of July, 2016, the Philadelphia County Common Pleas Court's October 29, 2014 order is affirmed in part, vacated in part and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge