IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Plum Borough, : 
                Appellant : 
                     : 
          v. : No. 179 C.D. 2021
                     : SUBMITTED: October 18, 2021
Konstantinos Koromvokis and : 
Zoning Hearing Board of the : 
Borough of Plum : 

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                     FILED: November 15, 2021

Appellant Plum Borough appeals from the Court of Common Pleas of Allegheny County's (Common Pleas) February 4, 2021 order, which affirmed the Zoning Hearing Board of the Borough of Plum's (Board)[1] July 21, 2020 decision to grant Appellee Konstantinos Koromvokis' request for a dimensional variance. This variance retroactively authorized a freestanding garage built by Koromvokis in the front yard of his property, located at 140 Beech Road in the Borough (Property), which otherwise violated the setback requirements of the Borough's Zoning Ordinance.[2] After thorough consideration, we reverse.

---

[1] Though the Board is listed as an appellee in the caption, it has declined to submit a brief to our Court.

[2] Plum Borough Zoning Ordinance, Allegheny County, Pa., *as amended* (2017), available at https://www.plumboro.com/sites/g/files/vyhlif3686/f/pages/plum_zoning_ordinance.pdf (last visited November 12, 2021).

## I. Background

On October 30, 2019, Heather Oravitz, the Borough's building code official, sent Koromvokis a letter informing him that he had violated the Zoning Ordinance by failing to apply for and obtain a building permit for the garage, which Koromvokis had built without advance Borough approval. Reproduced Record (R.R.) at 90a. As constructed, the garage's street-facing edge was a distance of 2.72 feet from Beech Road. Borough's Br. at 42 (Board's Findings of Fact, Conclusions of Law & Decision); *see* R.R. at 94a, 109a-10a, 119a-31a (maps and photos of the Property showing the garage's location). Oravitz directed Koromvokis to correct this issue by submitting a permit application to the Borough and he complied with her request on December 27, 2019. R.R. at 90a, 92a. On January 2, 2020, Oravitz notified Koromvokis via letter that she had denied his application, explaining in relevant part that she could not issue the desired permit because the garage's location violated the Zoning Ordinance's bar against accessory structures and uses in the front yards of lots without a 100-foot setback.[3] *Id.* at 96a.

In response, Koromvokis filed an application with the Board, through which he requested relief from this requirement in the form of a dimensional variance. *Id.* at 105a-11a. Koromvokis included a letter to the Board with his application, in which he explained why he believed the variance he sought was justified and necessary. *Id.* at 107a-08a. Of particular relevance to our disposition of this appeal, Koromvokis stated in this letter

> that the grade from the street to the house is quite steep. The distance from the road to [the] house is approximately

---

[3] This requirement is found in Section 321(C)(1), which states: "Accessory structures and uses, with the exception of authorized signs and fences[,] shall not be located in the required front yard of any lot in any zoning district unless a 100[-]foot setback is provided from the required front setback line." Zoning Ordinance § 321(C)(1).

2

50 feet[;] however to build anything on [the] hill [in the Property's front yard] would mean installing a 15-20[-]foot[-tall] retaining wall that would essentially be right in front of the house. Even if all of this was done, the garage would only be approximately 30-40 feet from the road, I'm sure you will agree this solution makes no sense for anybody.

Furthermore, due to the somewhat unique property lines ([r]hombus shape), I could not put the garage on either the left or right side without crossing the property line. If it [was] behind the [house's] deck, it would be on the neighbor's property. If it [was] to be in the rear, it would essentially be in a swamp and a significant distance from the house; the drive would also be right down the property line, which would not be practical or aesthetically pleasing.

Regarding the hardship considerations, the current situation has been problematic due to the steep nature of the hill. For example:

> • My mother once had to get taken away in an ambulance, which got stuck and had to be towed up the driveway (I have video).
>
> • The next door neighbor has also towed me out on several occasions.
>
> • I have a small child (going on 4) who obviously requires child care; I have had to miss several work days simply because the babysitter can't get down the driveway[.]
>
> • A pizza delivery man slid down the driveway, crashing into our shed/storage room[.]
>
> • I have [a] brother who is severely mentally handicapped and requires constant supervision. He is shuffled between my house and my sister[']s [home] on a daily basis (she lives right down the street). In the winter, this causes a real problem for him and he has fallen many times. Also, I worry for my 63[-]year[-]old sister who frequently has to escort him.

The above list details some of the issues we have encountered. My biggest concern moving forward is the

risk of a winter storm coming overnight and we are stuck in the event of an emergency. The garage eliminates this as it sits on the top level [of the Property's front yard hill], and the road is accessible.

Furthermore, I do want to point out that we have always parked our cars at the top of the drive. We simply put a shelter over the parking pad. We did this for the safety of my daughter, brother, sister, and me getting in and out of the cars. Furthermore, it provides some protection to our vehicle from the snow and salt. Many neighbors have commented on how nice the structure is. Please know that this is not some sort of dilapidated structure, I paid over [$]15,000 for the garage, concrete, and landscaping. As you will see in the enclosed pictures, the structure is of high quality, was professionally installed, and is very nice looking.

. . . .

In closing, I do want to point out that I meant no disrespect to the [B]orough, nor did I mean to disrespect the zoning rules. I hired a professional garage company [that] assured me no permit was needed so long as no one was living in the structure. However, I did check with the [B]orough and [it] advised that I needed the survey to get the permit. This created a problem in that we had a robbery, in which the safe deposit box [containing] the deed & survey were stolen (incident report on file with [the Borough] Police)[.] At the same time, the contractor called me with basically minimal notice and advised if they couldn't start [the following day], they couldn't do [the work] until springtime and I had already paid a significant deposit, so I allowed them to assemble [the] structure. I do apologize for this. However, please know no disrespect was intended.

*Id.*

The Board then held a hearing regarding Koromvokis' variance application on July 15, 2020.[4] Koromvokis reiterated to the Board that the Property sloped

---

[4] A Borough official clarified at this hearing that the applicable front yard setback requirement was 30 feet, rather than 100 feet, because the Property was zoned SR-Single **(Footnote continued on next page…)**

4

sharply downwards from Beech Road towards his house, which he said directed the flow of water down the Property's driveway when it rained and often turned the area at the base of the driveway around the house's storage room into a "swamp." Board Hr'g Tr., 7/15/20, at 5, 7-8, 10, 15-18. According to Koromvokis, this made it very difficult for vehicles and people to successfully traverse the driveway, especially during the wintertime. *Id.* Koromvokis stated that this situation, coupled with the needs of his young daughter and his mentally disabled brother, rendered the garage's current location the only feasible spot for it on the Property. *Id.* In addition, Koromvokis again maintained that the company he had hired to build the garage had initially told him that a government permit was unnecessary. *Id.* at 6-7. Upon learning that a permit was needed, he had intended to obtain it before commencing construction, only to be thwarted by the theft of critical paperwork and the construction company's refusal to delay breaking ground. *Id.* at 6-7, 34-35.

Several other people also gave testimony to the Board. Linda Smith, Koromvokis' next door neighbor, expressed her belief that the garage negatively impacted the "open . . . airy feeling" of the neighborhood and obstructed the view of both motorists and pedestrians on Beech Road. *Id.* at 21-24. David Soboslay, the Borough's assistant manager, echoed Smith's assertions and also stated that the garage's location could interfere with the Borough's ability to plow snow on the adjacent roadway. *Id.* at 25-29. Koromvokis disputed the validity of these aesthetic and public safety concerns, as did Emanuel Mamatas, a physician who cared for Koromvokis' brother; Kevin Miller, another of Koromvokis' neighbors; and John

---

Residential. *See* Board Hr'g Tr., 7/15/20, at 12; Zoning Ordinance § 309, Table 2. Thus, as the garage was located 2.72 feet from the front property line, Koromvokis was seeking a dimensional variance of 27.28 feet from the setback mandated by Section 309 of the Zoning Ordinance. *See* Board Hr'g Tr., 7/15/20, at 3, 12; *see* R.R. at 116a (Board's official public notice regarding July 15, 2020 hearing).

Falcone, a Borough resident who lived farther down Beech Road. *Id.* at 33-34, 37-41.[5] Mamatas also attested to the hazards posed by the Property's topography, stating that it was necessary to have the garage in that location to ensure that Koromvokis' brother could be transported elsewhere when he needed medical care, concerns that were shared by Maria Means, Koromvokis' sister, who recounted her memories about the aforementioned incident in which a tow truck extricated an ambulance from the muck at the bottom of the Property's driveway. *Id.* at 37, 41-42.

The Board unanimously voted to approve Koromvokis' dimensional variance application at the end of the hearing, *id.* at 44-45, and formalized that vote through a written decision issued on July 21, 2020. Borough's Br. at 42-44. The Borough then appealed the Board's decision to Common Pleas, which took no additional evidence and affirmed the Board on February 4, 2021. This appeal to our Court followed.

## II. Discussion

The Borough's argument is, when distilled to its essence, that the Board abused its discretion by granting Koromvokis' request for a dimensional variance. *See* Borough's Br. at 25-35. We agree.[6]

---

[5] In addition, Oravitz briefly testified that she had previously dealt with Koromvokis in 2019, when he had helped build a porch and deck at his sister's house in the Borough without first obtaining any permits. Board Hr'g Tr., 7/15/20, at 30. Oravitz explained that, at that time, she had informed Koromvokis of the need for such permits before commencing with that project. *Id.* at 30-31.

[6] "Our standard of review, where [a court of common pleas] takes no additional evidence, is limited to determining whether constitutional rights were violated, [whether] an error of law was committed[,] or whether necessary findings of fact were supported by substantial evidence of record." *SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 208 n.11 (Pa. Cmwlth. 2002). "By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983) (citations omitted).

6

The Borough, through its Zoning Ordinance, has expressly adopted the variance test set forth in Section 910.2(a) of the Pennsylvania Municipalities Planning Code (MPC).[7] *See* Zoning Ordinance § 1208(A). Under this provision of the MPC,

> The [B]oard may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
>> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
>>
>> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>>
>> (3) That such unnecessary hardship has not been created by the [applicant].
>>
>> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>>
>> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

---

[7] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

7

53 P.S. § 10910.2(a).

We view this language through the lens of our well-established case law in this realm.

> A variance . . . is issued by a zoning hearing board [and] is not provided for in the zoning ordinance, but [rather] is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land. . . . Although zoning ordinances are to be liberally construed to allow for the broadest possible use of the land, the applicant seeking a variance bears a heavy burden. *See Beers ex rel. P/O/A Beers v. Zoning Hearing Bd. of Towamensing Twp.*, 933 A.2d 1067, 1069 (Pa. Cmwlth. 2007) (the letter of the ordinance cannot be disregarded under the pretext of pursuing the spirit). . . . The reasons for granting a variance must be substantial, serious, and compelling. *Valley View* . . . , 462 A.2d [at] 640[.]

*Nowicki v. Zoning Hearing Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).

With regard to dimensional variances in particular, they "involve[] a request to adjust zoning regulations to use [ ] property in a manner consistent with [those] regulations," in contrast to use variances, which "involve[] a request to use property in a manner that is wholly outside zoning regulations." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014). Dimensional variances consequently pose a lesser potential threat to the public interest, as they do not create the same degree of deviation from zoning regulations as their brethren. *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 40 (Pa. Cmwlth. 2011). In keeping with this, "[t]he quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 48 (Pa. 1998). "To justify the grant of a dimensional

8

variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id.* at 48.

However, this does not mean that "dimensional requirements . . . [are] 'free-fire zones' for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially 'hurt' if it could not do what it wanted to do with the property[.]" *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). "Although a property owner is not required to show that his or her property is valueless unless a variance is granted, mere economic hardship will not[, in and] of itself[,] justify a grant of a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) (some punctuation omitted). Nor are "personal . . . considerations . . . sufficient grounds upon which to base the grant of a variance." *Borough of Latrobe v. Sweeney*, 331 A.2d 925, 927 (Pa. Cmwlth. 1975). "A variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). The onus is thus on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Id.* at 598 (emphasis in original). Accordingly, our appellate courts have "consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to [develop a property as they see fit], the unnecessary hardship

criterion required to obtain a variance is not satisfied[.]" *Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012); *accord Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 150 (Pa. Cmwlth. 2011); *Yeager*, 779 A.2d at 598.[8]

Here, Koromvokis' own words fatally undermine the idea that he could not have built a garage on the Property without variance relief. As already noted, Koromvokis informed the Board prior to the variance application hearing that "build[ing] anything on [the] hill [in the Property's front yard] would mean installing a 15-20[-]foot[-tall] retaining wall that would essentially be right in front of the house. Even if all of this was done, the garage would only be approximately 30-40 feet from the road[.]" R.R. at 107a. This establishes that Koromvokis could have erected the garage at a different location than that which he ultimately chose, one which would have fully complied which the Zoning Ordinance's 30-foot setback requirement without the need for a dimensional variance. Furthermore, there is no evidence in the record showing that Koromvokis would have suffered financial hardship through having to build the garage on this Zoning Ordinance-compliant spot. Thus, given the record before us, it is apparent that the challenge facing Koromvokis here was not that he *could not* build the garage elsewhere; rather, it was that he *did not want* to build it elsewhere, partly because he believed the location he

---

[8] Furthermore, we note that "[t]here is a strong policy against assisting landowners who violate a zoning ordinance, whether negligently or intentionally, long apparent in this Court's jurisprudence." *Appletree Land Dev. v. Zoning Hearing Bd. of York Twp.*, 834 A.2d 1214, 1218 (Pa. Cmwlth. 2003). "[A] landowner is duty bound to check the zoning status of real estate, and the failure to do so, which results in the lack of knowledge, cannot support the issuance of a variance[.] . . . One who undertakes to make use of real estate . . . without inquiring as to whether the use is permitted by the municipality's zoning ordinance[] does so at his own peril." *Mucy v. Fallowfield Twp. Zoning Hearing Bd. of Washington Cnty.*, 609 A.2d 591, 593-94 (Pa. Cmwlth. 1992). In other words, the aphorism "it is better to ask for forgiveness than for permission" does not apply in the realm of zoning law.

had chosen better served his family's needs, partly because he had already paid the construction company a deposit for the project, and partly because getting the proper permits from the Borough would have prevented the garage from being completed within his desired timeframe. *See* R.R. at 107a-08a. Consequently, the Board abused its discretion by granting Koromvokis' variance application, because its conclusion that Koromvokis could not build a garage on the Property in strict conformity with the Zoning Ordinance's front yard setback requirements is not supported by substantial evidence.[9]

## III. Conclusion

In light of the foregoing analysis, we reverse Common Pleas' February 4, 2021 order, through which it affirmed the Board's July 21, 2020 decision.

_____
ELLEN CEISLER, Judge

---

[9] Given our disposition of this matter, we need not determine whether Koromvokis' application satisfied the other prongs of the variance test. We nevertheless note that the Board failed to make any factual findings regarding whether granting the dimensional variance would change the essential character of the area, substantially or permanently impair the use of nearby properties, or harm the public welfare. *See* Borough's Br. at 42-44. Thus, in addition to failing the second prong of the variance test, it is unclear whether Koromvokis' application met the requirements of the fourth prong.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Plum Borough,　　　　　　　　　　　：
　　　　　　　Appellant　　　　　　：
　　　　　　　　　　　　　　　　　：
　　　　v.　　　　　　　　　　　　：　No. 179 C.D. 2021
　　　　　　　　　　　　　　　　　：
Konstantinos Koromvokis and　　　　：
Zoning Hearing Board of the　　　　　：
Borough of Plum　　　　　　　　　：

# **O R D E R**

AND NOW, this 15th day of November, 2021, the Court of Common Pleas of Allegheny County's (Common Pleas) February 4, 2021 order, through which Common Pleas affirmed the Zoning Hearing Board of the Borough of Plum's July 21, 2020 decision to grant Appellee Konstantinos Koromvokis' dimensional variance application, is REVERSED.

_____
ELLEN CEISLER, Judge