IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ebrahim Nuru, : 
                Appellant : 
                 : 
      v. : 
                 : No. 72 C.D. 2020
Zoning Board of Adjustment : Submitted: March 18, 2021


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: April 16, 2021


      Ebrahim Nuru (Nuru) appeals from the December 18, 2019 order of the Court of Common Pleas of Philadelphia County (trial court) affirming the denial by the Philadelphia Zoning Board of Adjustment (Board) of use and dimensional variances requested by Nuru pertaining to his property located at 6719 Upland Street, Philadelphia, Pennsylvania, 19142 (the Property). Upon review, we affirm.[1]

---

[1] By order dated December 7, 2020, we noted that the City of Philadelphia was precluded from filing a brief or participating in oral argument due to its failure to file a brief in accordance with this Court's order dated October 15, 2020. *See* Cmwlth. Ct. Order, 12/7/20.

## I. Background

The Property consists of three parcels of land zoned RM-1[2] for residential use only.[3]  Trial Court Op., 7/13/20 at 1, Reproduced Record (R.R.) at 86a.  Nuru rented out one house and several unlawful self-storage units on the Property.  *Id.*  In June 2017, Nuru applied to the Philadelphia Department of Licenses and Inspections (Department) for a zoning/use registration permit to consolidate the Property's three lots into a single zoning lot, to replace an existing chain link fence with a wooden fence, and to use ten existing buildings on the site as follows:

> Building 1: Existing single[-]family home to remain.
>
> Building 2: A "site office" with a "handicap accessible bath for it and other building uses on site."
>
> Buildings 3-8: Legalization of existing storage units.
>
> Building 9: Auto body repairs with "self[-]contained paint shop area."
>
> Building 10: Limousine storage with "mechanical repairs (limos) with two lifts."[4]

---

[2] The acronym "RM-1" evidently denotes the residential multi-family-1 zoning district. *See* Phila., Pa., Code § 14-401, Table 14-401-1.

[3] Nuru avers that Building 1 is currently being used as residential housing, Building 2 as an office, Buildings 3-8 as leased storage buildings, and Buildings 9 and 10 as storage and for minor vehicle maintenance for his limousine business.  Nuru's Br. at 17-19.

[4] Regarding Buildings 9 and 10, Nuru later revised his proposal to eliminate "any kind of auto-repair body shop and paint shop."  Finding of Fact (F.F.) 6, Reproduced Record (R.R.) at 78a (citing Notes of Testimony (N.T.), 12/20/2017 at 4, R.R. at 20a).

Board's Findings of Fact (F.F.) and Conclusions of Law (C.L.), 5/7/19, F.F. 1, R.R. at 77a. Nuru's requests implicated both dimensional and use variances. C.L. 1, R.R. at 82a.

In October 2017, the Department issued a notice of refusal, determining that Nuru's proposed uses were expressly prohibited in the RM-1 zoning district. F.F. 2, R.R. at 78a. The Department further found that the proposed fence exceeded the maximum permitted height of four feet along the Property's street frontage and that the proposal failed to meet the applicable rear yard depth requirement. *Id.*

Nuru appealed the Department's denial to the Board, which held a public hearing in December 2017. F.F. 3, R.R. at 78a; Trial Court Op., 7/13/20 at 2, R.R. at 87a. *Nuru did not testify or proffer the testimony of any witness*. Trial Court Op., 7/13/20 at 2, R.R. at 87a. Numerous individuals and groups from the community offered testimony in opposition to the proposed variance, including 68 community members, the Philadelphia Clean Air Council, the Philadelphia Planning Commission, the Southwest Philadelphia Consortium of Registered Community Organizations, and state and local elected representatives, including Philadelphia Councilman Kenyatta Johnson (Councilman Johnson). Trial Court Op., 7/13/20 at 2, R.R. at 87a; *see also* F.F. 13, R.R. at 80a.

Nuru's counsel explained that the storage units were leased to individuals who "keep Christmas supplies and so forth in there" and "come in once or twice a year." F.F. 10a,[5] R.R. at 79a (quoting Notes of Testimony (N.T.), 12/20/17, at 7, R.R. at 23a. He also submitted a zoning map, which he asserted demonstrated that the surrounding area was zoned "ICMX," an industrial

---

[5] The Board included two separate findings of fact numbered 9 through 11. For the sake of clarity, this opinion refers to the first set as findings of fact 9a through 11a, and the second set as findings of fact 9b through 11b.

3

commercial mixed-use zoning district. *See* Phila., Pa., Code Table § 14-403, 14-403-1; *see also* F.F. 11a, R.R. at 79a (quoting N.T., 12/20/17 at 6, R.R. at 22a). Nuru's counsel stated that "this particular block of Upland Street has approximately half a dozen other ICMX uses around it." F.F. 9b, R.R. at 79a (quoting N.T., 12/20/17 at 6, R.R. at 22a).

Addressing the hardship requirement for the grant of a variance, Nuru's counsel stated that "[t]he hardship is related to the fact that we've got a site that you have no street frontage on to get out," and that "[w]ithout the consolidation and without the use, you're going to have 15,000 square [feet of] vacant land here." F.F. 10b, R.R. at 79a (quoting N.T., 12/20/17 at 8, R.R. at 24a). Nuru's counsel further stated that "[n]obody has come forward to put housing on here . . . because it's an existing ICMX site, all around it," and "it would be hard to convince somebody to come in and use . . . 15,000 square feet of open area for new housing." F.F. 11b, R.R. at 80a (quoting N.T., 12/20/17 at 8, R.R. at 27a).

The Board unanimously voted at the conclusion of the December 20, 2017 hearing to deny the requested variance. Trial Court Op., 7/13/20 at 2, R.R. at 87a; *see also* F.F. 4, R.R. at 78a. Nuru thereafter appealed to the trial court. *See* Notice of Appeal, dated 1/9/18, R.R. at 14a. By order dated August 16, 2018, the trial court reversed the Board's decision and granted Nuru's appeal. Trial Court Order, 8/16/18, R.R. at 60a.

In January 2019, Councilman Johnson filed a petition to intervene and to reopen the matter *nunc pro tunc* or, in the alternative, to appeal *nunc pro tunc*, which the trial court granted in March 2019. *See* Trial Court Docket at 5-6, R.R. at 5a-6a. In March 2019, the trial court granted Councilman Johnson's request,

4

reopening the appeal and vacating its August 16, 2018 order. *See* Trial Court Docket at 6, R.R. at 6a.

In May 2019, after the trial court reopened the appeal before it, the Board issued findings of fact and conclusions of law related to its December 2017 decision. *See* R.R. at 77a. The Board concluded that the proposed auto repair and maintenance, business office, and storage uses were prohibited in the RM-1 Residential zoning district. C.L. 1, R.R. at 82a (citing Phila., Pa., Code § 14-602(1)). The Board also found that the proposal failed to meet applicable requirements for maximum fence height and minimum rear yard depth, such that permitting the proposed uses would require both use and dimensional variances. *Id.* The Board determined that "[o]n this record, [Nuru] has not [satisfied] . . . the criteria for grant of either use or dimensional variances [sic]," as set forth in Section 14-303(8)(e). C.L. 4 & 9, R.R. at 83a-84a (citing Phila., Pa., Code § 14-303(8)(e)). The Board concluded that Nuru failed to demonstrate that denial of his variance requests would result in unnecessary hardship, reasoning that "[Nuru's] claim of hardship [was] based solely on the unsubstantiated representations of his attorney that the Property cannot be used for a permitted purpose because of its size and use history and because of the existence of ICMX[-]zoned parcels in the immediate vicinity." C.L. 11, R.R. at 84a (citing Phila., Pa., Code § 14-303(8)(e)(.1)(.a)(.2)).

Further, the Board noted that "[Nuru] did not present expert testimony or other persuasive evidence showing the Property could not be used for a[n] RM-1 compatible use." C.L. 12, R.R. at 84a. The Board determined that "[Nuru's] failure to show hardship [was] sufficient, in itself, to require denial of the requested variances," while further noting that "[Nuru] also failed to establish that the remaining criteria for grant of a variance [were] met." C.L. 13, R.R. at 84a. The

5

Board also concluded that "[Nuru] did not establish that the requested variances [were] the minimum necessary to afford relief or that the proposed uses would not detrimentally impact the public health, safety or welfare." C.L. 14, R.R. at 84a. Further, the Board found that Nuru "failed to establish that the proposed uses would not adversely and substantially affect the implementation of any adopted plan for the area where the property is located," noting that "the [Philadelphia] Planning Commission representative specifically testified that the proposal is inconsistent with the Commission's 2035 Plan."[6] C.L. 15, R.R. at 85a (brackets and internal quotation marks omitted).

On December 18, 2019, following oral argument, the trial court entered judgment affirming the Board's decision and denying Nuru's appeal. *See* Trial Court Hearing, 12/18/19 at 1, R.R. at 63a; Trial Court Order, 12/18/19, R.R. at 69a. This appeal by Nuru followed. In July 2020, the trial court issued an opinion expounding upon its December 18, 2019 order pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). *See* R.R. at 86a. Therein, the trial court observed that Nuru's "attorney presented limited conclusory testimony as evidence[7] that his three [] parcels established an unnecessary hardship based on their layout and use with respect to the surrounding RM-1 residential neighborhood," whereas parties opposed to the requested variance provided extensive testimony. Trial Court Op., 7/13/20 at 4, R.R. at 89a. The trial court reasoned that "the fact that [Nuru's] current

---

[6] "*Philadelphia 2035* is the comprehensive plan for managing growth and development in the City of Philadelphia. The staff of the Philadelphia City Planning Commission . . . creates the plans through an open process that includes outreach to citizens, business associations, institutions and other city agencies." *Philadelphia 2035: The Vision for Philadelphia's Growth and Development*, *available at* https://www.phila2035.org/ (last visited March 8, 2021).

[7] We note that the statements of Nuru's counsel do not constitute testimonial evidence. *See* discussion *infra*, p. 15.

6

usage is illegal and nonconforming does not create a hardship. At best, these are self-imposed hardships because [Nuru] has blatantly flouted the [Philadelphia Code of General Ordinances (Code)]." Trial Court Op., 7/13/20 at 8, R.R. at 93a. Further, the trial court determined that Nuru's claims that he cannot develop the Property into a viable, conforming use due to the lot size, and that commercial use would be more profitable, fail to establish the requisite hardship. Trial Court Op, 7/13/20 at 8-9, R.R. at 93a-94a (citing *Laurel Point Assocs. v. Susquehanna Twp. Zoning Hearing Bd.*, 887 A.2d 796, 830 (Pa. Cmwlth. 2005)). The trial court also noted that the Board based its decision on extensive testimony from community members and interested parties. Trial Court Op., 7/13/20 at 10, R.R. at 95a. The trial court determined that Nuru "provided no concrete evidence outside of conspiracy theory speculation that the [Board's] reliance on the . . . [testimony of] community members was mischaracterization." Trial Court Op., 7/13/20 at 14, R.R. at 99a.

## II. Issues on Appeal

On appeal,[8] Nuru raises four issues for this Court's review, which we paraphrase as follows. First, the Property has unique physical attributes that establish an unnecessary hardship. Second, the requested variances would legalize preexisting uses, and without consolidating the three lots, existing buildings are built across lot lines and one lot has no street access. Third, the proposed uses are not

---

[8] Where a trial court neither conducts a hearing nor receives additional evidence that was not before the Board, the applicable standard of appellate review is whether the board committed an abuse of discretion or an error of law. *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998). The Board abuses its discretion when it makes material findings of fact not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might find adequate to support a conclusion. *Id.* Further, "[o]n an appeal from the grant or refusal of a variance we examine the record only to ascertain whether the action taken was clearly arbitrary, capricious or unreasonable or in clear violation of positive law." *Ferry v. Kownacki*, 152 A.2d 456, 457 (Pa. 1959).

contrary to the public interest and the requested variances would provide the minimum relief necessary. Fourth, Councilman Johnson mischaracterized Nuru's proposed uses of the Property, and the trial court should have given weight to Nuru's ownership history. Trial Court Op., 7/13/20 at 3, R.R. at 88a. We address these issues together.

### III. Discussion

Nuru contends that the expense of demolishing existing buildings on the Property and rebuilding them in accordance with applicable zoning restrictions "constitutes substantial evidence of unnecessary hardship." Nuru's Br. at 13, 18 & 22 (citing *O'Neill v. Phila. Zoning Bd. of Adjustment*, 120 A.2d 901 (Pa. 1956); *Logan Square Neighborhood Ass'n v. Zoning Bd. of Adjustment of the City of Phila.*, 379 A.2d 632, 634 (Pa. Cmwlth. 1997)). Further, Nuru maintains that strict application of the Code would result in hardship that is unique to the Property because "[s]ome of the current buildings were built across the lot lines" and "have been in place for a long time." *Id.* at 11. Nuru asserts that "consolidation of the three lots into one . . . is a logical solution that does not require demolition of sound buildings, especially where[,] as here, one of the lots has no street frontage." *Id.* at 12.

Nuru asserts that the existence of one residence on the Property does not demonstrate the suitability of the remaining buildings for residential purposes. Nuru's Br. at 13. Nuru also takes issue with the trial court's determination that any hardship resulting from strict adherence to the Code is "self-imposed," asserting that the "buildings, the attributes and the unusual configuration of the [P]roperty have existed for decades," such that any hardship was "in no way created" by him. *Id.* at 13-14. Nuru further contends that although he knew about the zoning requirements

8

before he purchased the Property, that does not mean there is no hardship or that any hardship is "self-imposed," because the hardship is the result of natural conditions on the Property rather than Nuru's purchase of it. *Id.* at 14 (citing *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069 (Pa. 2007); *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment*, 815 A.2d 652, 657 (Pa. Cmwlth. 2003)).

Factually, Nuru asserts that Buildings 2 through 8 "do not promote traffic as they are typically only opened a couple of times per year." Nuru's Br. at 19. Nuru maintains that "[t]here were no complaints about [his] use of the Property," but that "nearly six months after the variance was granted Councilman Kenyatta Johnson filed a Petition to Intervene and that Petition was granted and a rehearing ensued."[9] *Id.* at 23. Nuru also contends his "actual use of the Property . . . demonstrated that the grant of the variance was not harmful to the health, safety and welfare of the neighborhood." *Id.* at 24. Nuru asserts that he is entitled to the requested variance because the "Property is currently being put to beneficial use." *Id.* at 25-26. He argues that opponents of the variances suggested multi-family dwellings or possible eminent domain regarding the Property, disregarding his ownership and the unique characteristics of the Property and discussing the Property "as if he were not even present." *Id.* at 25-26 (quoting N.T., 12/20/17 at 21-22, R.R. at 37a-38a). Nuru, therefore, asserts that the denial of the requested variances "was arbitrary and capricious" and "was not supported by substantial evidence." *Id.* at 26. Further, Nuru alleges that although "[the Board] claims that the denial of the variances is based on [his] non-conformity with the [Code]," "the evidence in the

---

[9] Nuru's issues raised on appeal do not include any assertion of error by the trial court in reopening the matter or in the timing thereof.

9

[r]ecord shows it was based on the desire of some public officials to have residential housing on [the] [P]roperty." *Id.* at 23.

Councilman Johnson counters that Nuru failed to present specific, concrete, and compelling evidence in support of the requested variances. Councilman Johnson's Brief at 15 & 18. He observes that the statements of Nuru's counsel did not constitute testimonial evidence and that Nuru failed to provide the testimony of any fact witness or expert witness. *See id.* at 16-17 (citing Phila., Pa., Code § 14-303(14)(f)). Specifically, "Nuru did not present any evidence concerning the feasibility of using the Property for a permitted purpose, costs to conform the Property to a permitted use, or any explanation as to why the residential use currently existing on part of the Property cannot be extended throughout the Property." Councilman Johnson's Br. at 18. Further, Councilman Johnson maintains that "[w]hile Nuru argues that one lot needs street frontage, he ignores the fact that he owns both lots in front of the land[-]locked lot and, as a result, there is no issue with respect to accessing the street." *Id.* at 27.

With respect to the use variance requested to perform limousine repair and maintenance on the Property, Councilman Johnson asserts that "Nuru's desire to use the Property for his personal pecuniary gain by reducing expenses for his limousine business" fails to establish the requisite hardship. Councilman Johnson's Brief at 20. Thus, Councilman Johnson maintains that Nuru is not entitled "to use his residentially zoned property in a manner that is most economically advantageous to his unique business interests." *Id.* at 21. Councilman Johnson also contends that the existing lease agreements that violate Philadelphia's zoning laws constitute, "at best," a "self-imposed hardship." *Id.* at 21.

The Supreme Court of Pennsylvania has explained:

10

> A variance, as the name implies, is a departure or variance from the exact provisions of a zoning ordinance, and is granted where a strict enforcement of the literal terms of the ordinance will result in an *unnecessary* hardship upon a particular property over and above the hardship which may be imposed by the ordinance on all properties in that community[.]

*Brennen v. Zoning Bd. of Adjustment of the City of Connellsville*, 187 A.2d 180, 182 (Pa. 1963) (emphasis in original).  "The burden on a landowner seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling."  *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 39-40 (Pa. Cmwlth. 2011) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983)).  "Variances, especially those authorizing commercial uses in a residential district, should not be generously granted."  *J. Richard Fretz, Inc. v. Hilltown Twp. Zoning Hearing Bd.*, 336 A.2d 464, 465-66 (Pa. Cmwlth. 1975) (citation omitted); *see also Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34 A.3d 286, 296 (Pa. Cmwlth. 2011) (holding that "variances should be granted sparingly and only under exceptional circumstances").

"[I]n determining whether unnecessary hardship has been established, courts should examine whether the variance sought is use or dimensional." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998).  In the context of use variances, "unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance." *Hertzberg*, 721 A.2d at 47 (emphasis omitted). "To justify the grant of a dimensional variance, courts may consider multiple factors,

11

including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50. However, "[m]ere economic hardship will not of itself justify a grant of a variance." *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh*, 559 A.2d 896, 903-04 (Pa. 1989). Further, "[t]he fact that an increase or decrease in value will result from the grant or refusa[]l of a variance will not, standing alone, constitute a sufficient hardship." *Ferry v. Kownacki*, 152 A.2d 456, 457 (Pa. 1959). "Property owners do not have a right to utilize land for their highest and best financial gain." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 120 (Pa. Cmwlth. 2002).

"When a party seeks a variance for a property located in Philadelphia, the Board must also consider the factors set forth in the [Code]." *Bawa Muhaiyaddeen Fellowship*, 19 A.3d at 39-40. The Code provides that "[t]he Zoning Board shall grant a variance only if it finds each of the following criteria are satisfied":[10]

**(.1)   General Criteria.**

_____

[10] Section 14-1801(1)(c) of the Code provides as follows:

> The [Board] may, after public notice and public hearing . . . . authorize, upon appeal, in specific cases, such variance from the terms of [] Title [14] as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Title would result in unnecessary hardship, and so that the spirit of this Title shall be observed and substantial justice done, subject to such terms and conditions as the Board may decide[.]

Phila., Pa., Code § 14-1801(1)(c).

12

(.a)    The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant . . . ;

(.b)    The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;

(.c)    The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d)    The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e)    The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f)    The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g)    The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h)    The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

**(.2)  Use Variances.**

13

To find an unnecessary hardship in the case of a use variance, the Zoning Board must make all of the following findings:

(.a)    That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b)    That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c)   That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d)   That the hardship cannot be cured by the grant of a dimensional variance.

**(.3)  Dimensional Variances.**

To find an unnecessary hardship in the case of a dimensional variance, the Zoning Board may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

Phila., Pa., Code § 14-303(8)(e).

Nuru maintains that in establishing hardship, an applicant for a variance need not demonstrate that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. Nuru's Br. at 17 (citing *Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014)). At least with regard to use variances, however, that contention is directly contrary to the express requirements of the Code.[11] *See Bawa Muhaiyaddeen Fellowship*, 19 A.3d at 39-40; *Oxford Corp.*, 34 A.3d at 296; *see also Randazzo v. Phila. Zoning Bd. of Adjustment* (Pa. Cmwlth., No. 490 C.D. 2016, filed Oct. 12, 2016),[12] slip op. at 9 (although standard for establishing unnecessary hardship for a dimensional variance is more relaxed than for a use variance, applicant must still establish "each of the conditions set forth in the zoning ordinance, including unnecessary hardship").

We agree with the Board that Nuru failed to establish that the denial of any of his variance requests would result in unnecessary hardship. Nuru declined to testify at the December 2017 hearing before the Board or to proffer the testimony of any witness. Section 14-303(14)(f) of the Code provides that "[s]tatements by a person's attorney on his or her behalf shall not be considered as testimony, except where agreed upon by the parties." Phila., Pa., Code § 14-303(14)(f)). Our review of the record indicates that the parties entered into no such agreement. Thus, the statements of Nuru's counsel at the hearing did not constitute testimonial evidence. *See id.*; *see also Randazzo*, slip op. at 14 n.5 (statements by applicant's counsel did

---

[11] *Marshall v. City of Philadelphia*, 97 A.3d 323 (Pa. 2014), was decided under an earlier version of the Code that did not impose the same requirements for a use variance as the current version.

[12] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a).

15

not constitute testimony, where hearing transcript revealed no agreement to that effect pursuant to the Code).

Regardless, the remarks made by Nuru's counsel, even if given evidentiary weight, failed to establish that strict application of the Code would result in unnecessary hardship. Nuru's counsel opined at the hearing before the Board that "it would be hard to convince somebody to come in and use . . . 15,000 square feet of open area for new housing" and that with "fencing and some more landscaping" the proposed commercial use "would be [] appropriate[.]" N.T., 12/20/17 at 6-7, R.R. at 22a-23a. However, these conclusory remarks failed to establish that "the [P]roperty has no value for any purpose permitted by the zoning ordinance" or any other prerequisite to granting a use variance. *Marshall*, 97 A.3d at 329; *see also Laurel Point Assocs.*, 887 A.2d at 803 (denial of validity variance to build commercial office buildings in a residential zoning district was proper where evidence consisted of conclusory opinions that the property was unsuitable for residential use). Indeed, Nuru concedes in his appellate brief that he offered no evidence concerning the feasibility of using the Property as it is zoned. Nuru's Brief at 6. Thus, Nuru failed to meet his heavy burden of establishing exceptional circumstances to justify use and dimensional variances.

For the foregoing reasons, we conclude that the Board acted within its discretion in determining that Nuru failed to establish that the denial of his variance requests would result in unnecessary hardship. Thus, the trial court did not err in affirming the Board's denial of the requested variances.

_____
CHRISTINE FIZZANO CANNON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ebrahim Nuru, :
               Appellant :
                                               :
            v. :
                                             :   No. 72 C.D. 2020
Zoning Board of Adjustment :

O R D E R

AND NOW, this 16th day of April, 2021, the December 18, 2019 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge